The first case on the calendar is United States v. We Build the Wall, Inc. Good morning, Your Honors, and good morning to Government Counsel, and may it please the Court. My name is Justin Weddle, and I'm with the law firm of Weddle Law, P-L-L-C. Together with my colleague, Julia Catania, we represent We Build the Wall, Inc., and its General Counsel, Chris Kobach, in connection with this appeal. The forfeiture statutes, Your Honors, do not permit the government to seize a third party's assets. Here, we're talking about We Build the Wall's bank accounts. In the context of an in personam criminal action against defendants who do not and never have owned those assets. As Justice Breyer put it in the case. Didn't they control those assets? Didn't the defendants control those assets? They're still not obtained by the defendants in any way, Your Honor. So, the defendants, Mr. Colfage was the CEO of We Build the Wall, so in that sense, he had authority over We Build the Wall accounts and things like that. But when money went into We Build the Wall accounts, that money was not obtained by Colfage for his own purposes. Actually, it turns out it was. He took a lot of that money, didn't he? But he took the money away from We Build the Wall. So, We Build the Wall built sections of wall. It bought steel, it paid contractors, it poured concrete. It spent money on its mission. When donors gave money to We Build the Wall, allegedly based in part on a fraud, the fraud was that none of the money would go to Colfage. If the money is given to We Build the Wall and We Build the Wall uses it, for example, to buy concrete, that money is not part of the fraud. Let's use your hypothetical and your reply brief with the drug dealer and then the neighbor and son. If the drug dealer, in his beneficence head, provided proceeds of his drug dealing activity to help buy that neighbor's house, but the neighbor isn't aware of it and then the neighbor dies and it's the son's. Are you telling me that the proceeds of that drug dealing activity from DD that eventually benefits the son, after the father, the owner, the neighbor dies, are not subject to forfeiture, not subject to restraint? If that's what you're telling me, why not? Well, I think that's a very different case, your honor, because that money is downstream from the defendant. So the defendant has obtained the money and then they took the money and they used it for something else. So the money would be traceable to the ownership of, I think the hypothetical was number six Front Street. Number six Front Street, right. Yeah, so the proceeds of drug dealing are traceable directly and they've come into the, the defendant has owned them, the defendant has obtained them in the words of Section 853, and then has moved them downstream to something that the defendant wants to spend money on. In this case, it turns out to be sort of beneficence toward a neighbor. So if the drug dealer there says, you know, I don't, I don't want to touch this, I don't want anything, give it to my neighbor, that's still obtaining, correct? I agree with that, your honor. So why is this categorically different? In other words, you've got defendants who say, give the money, you know, they're out there making their bitches and they say, give the money to rebuild the wall. But the scheme that's charged here is a diversion. So when, when a donor gives money to rebuild the wall, you could ask the donor. Okay, you gave money to rebuild the wall, the money is still in rebuild the wall's bank accounts, and rebuild the wall wants to spend it on buying concrete, the donor would say terrific, that's exactly what I want my money to be doing. Right? It's only when the money gets diverted away, taken out of rebuild the wall's bank account. And at that point, it is obtained by the defendant. And in the indictment, the allegations of the indictment have a lot of direct and indirect obtaining of funds. Counsel, I have two questions. First, is it true, actually, that people donated money after the indictment of the principals here? Is that true? That is true, your honor, as far as I know. That's stunning to me, by the way. The second question is, what would you have us do? Would you have us ask the district court to draw the line from their control to show control of rebuild the wall? Would that satisfy the government? Would that satisfy you? I know you're not the government. I know you used to be, but you're not the government. Not anymore, your honor. Well, I mean, I think that first of all, the case that we have here is a relatively narrow case, because there are lots of cases prosecuted in the Southern District of New York throughout the Second Circuit that are wire fraud cases affecting financial institutions. Wire fraud cases affecting financial institutions are covered by a criminal forfeiture statute. This is not one of those cases. This is plain, simple, plain vanilla wire fraud. It's not covered by any criminal forfeiture statute. And so, I mean, I think what I would have you do, the mere obtaining of property that is owned by We Build the Wall, but can be moved around, for example, the defendant, Mr. Kolfage, could write a check to hire a contractor to build a wall. He also can write a check for his own personal uses, correct? Isn't that what the charge is? That's right. And when he writes a check for his own personal uses, I think there's some allegations that money went to buy a boat. When he takes money away from the ownership of We Build the Wall, he has obtained it in the words of the statute. And the statute that the government's relying on here is Section 853 of Title 21, which is a drug statute, but it uses the word obtained. And the Supreme Court of the United States in the Honeycutt case specifically emphasized the use of the word obtained in the statute. Until Mr. Kolfage diverts the money to his personal use, he, as the defendant, has not obtained it. Instead, it is owned by essentially a third party. And I think going back to Judge Lohier's question earlier, there could be situations, and this is not one of them, but there could be situations where a defendant, you know, this is like an insider trading case, where a defendant is personally benefited by diverting the money. Do we need the district court to show that connection? Is that what you're saying? That if the district court had said, I find control of We Build the Wall in these defendants, that would have been enough? I don't think that control is enough, Your Honor, because in this case, obtaining the money, the defendant obtaining the money, and so… Isn't that the allegation in the criminal case that they did obtain the money? They obtained a small portion of the money. So there was, let's say, $25 million, I think, was the allegation donated to We Build the Wall. It's a little bit hard to tell from the face of the indictment exactly how much money was diverted. Some of the money, and this goes back again to the insider trading analogy and the thing I was saying to Judge Lohier's question, which is some of the money in the course of the scheme of being diverted ended up in the pockets of other people besides Colfax. There's allegations that people use shell companies and those people kept some of the money. I would say all of that money that's been diverted as part of getting the money to the defendants has transaction costs to it. And so part of the scheme is diverting that money, paying people to participate in the diversion of the money. And all of that money, I would say that can be the proceeds of the charge scheme and could be subject to forfeiture under an appropriate statute. Our main argument here before this court is that what is the statute that we're operating under? That statute by its terms doesn't apply. So our argument is we don't get to Section 853. But even if you assume that we're properly within Section 853, the main point of the Honeycutt case in the Supreme Court is that it has to be property obtained by the defendant. Now, I could obtain property if I'm a defendant. Excuse me, Mr. Well, but isn't the implication of what you're saying that the district court has to undertake a fairly massive proceeding to sort out which money is subject to pretrial seizure and which isn't? And in a case like this, that could well swallow the criminal case, which leads me to the next point, which is why is this order repealable at all? There's a post-conviction remedy. Well, first of all, I think that since we're not talking about a defendant's property, the whole point of a criminal forfeiture is to adjudicate the defendant's ownership and property. And the defendants don't own this property. I doubt that they are going to spend time litigating or caring whether a property that's not owned by them gets forfeited. I don't think that this is going to create a proceeding that swallows. You don't think so? You don't think they will protest the forfeiture? The four defendants or three now? You don't think they're going to contest the forfeiture? Well, if I could answer with a hypothetical, Your Honor. If the forfeiture involved, let's say, the forfeiture of Justin Weddle's car, I don't think that Mr. Colfage would spend a lot of time of his defense resources trying to protect from forfeiture a completely ancillary piece of property. But the argument is that this is not ancillary to the defendants, that they used it as a slush fund. But they didn't obtain it until it went to their benefit. And to go back to Judge Kaplan's point, I think that there certainly is jurisdiction here because this is in the nature of an injunction. How is it in the nature of an injunction? Go ahead. It's because property in an ex parte proceeding of We Build the Wall has been seized indefinitely. That's a classic injunction, Your Honor. So is an order of attachment an injunction? An order of attachment, I think, I mean, I think it depends. I think there are legal orders of attachment, non-equitable orders of attachment that are legal. I think this is an, this is equitable relief. And it's a restraining order. I mean, if you think about it, this is a strange context, because it's a restraining order. It's not labeled an injunction. But I think that's a quirk of the government's, I'm not saying anything about their intent, but their overreach here, just for lack of me getting the right word out of my head. But the fact that they're, what they're doing here is so far afield from the statutes. I understand, Mr. Weddle, just to follow up on Judge Kaplan's question about appellate jurisdiction, and the, your argument that this is a form of an injunction. The part of your argument is that this effectively shuts down an ongoing business. Is that right? Or is that wrong? Absolutely. Okay. So I also understand. I'm sorry, it's absolutely right or it's absolutely wrong. Sorry, I'm sorry, Judge Kaplan. It is absolutely correct that this order effectively shuts down this business. Okay. But I think you responded to Judge Pooler by saying people continue to give money after the indictment. Just to, but, Your Honor, well, let me back up. Money, donations were received. The way that the business receives donations is they go to a mail drop and they're processed by a vendor. So no one who works for We Build the Wall processes the mail of donations. Mail was received well after the indictment. And I, for all I know, it may continue to be received. I don't know how much money is in those envelopes. And until recently, But there is, there is, I'm sorry, I interrupted you. Go ahead, finish that. Until recently, the reason for that was because there was no money available to pay the vendor to open the envelopes, to open a bank, open a new bank account and process those checks. The government, the government indicated that We Build the Wall is free to use funds, not in the three restrained bank accounts. And does We Build the Wall have access to those funds or to funds that are not subject to the restraining order? First of all, the government didn't say that until months. I understand that. I understand that. But we are where we are. Right now, no, not yet. As a practical matter, though, Your Honor, as a practical matter, We Build the Wall does not have other funds. And the practicalities are that when you have bank accounts seized by the government with a restraining order like this, that has a lot of collateral consequences to a business. It's actually difficult to just open another bank account because banks don't want to bank you when you've had a bank account seized. Is there a bank account that's open? I believe that We Build the Wall has successfully opened another bank account. And I believe that they've started the process of processing. It's not it's not it's not it's not a shutdown company. It's struggling, but it's not a company that's been shut down or that is a total standstill. Since October 20th, it has it has had no expenditures since I'm sorry, since August 20th or 21st of whenever this was 2020. It has expended none of its money to reinstate the entity. You know, this was in the briefs, but the entity was administratively suspended. That just had to come out of someone's pocket. That didn't come out of the assets of We Build the Wall. Your time has long since expired. I apologize, Your Honor. Judge Loewe, if you hold your questions. Sure. They have We Build the Wall has reserved three minutes for rebuttal. Thank you. Let's hear from the government's counsel. May it please the court. My name is Robert Sobelman. I'm an assistant United States attorney for the Southern District of New York. I represent the United States on this appeal and in the district court below. I'm going to begin by responding to a few of the arguments that defense counsel made. First, the defendants do very much care about the funds that are in the process of being forfeited. Brian Kolfage filed a motion on his own behalf challenging the restraining order before the district court. The district court denied that motion as well, and it's not an issue on this appeal. But the idea that the defendants don't care about this money because it's not theirs is false. Don't they have some right of indemnification unless and until there's a conviction against the company? Does Mr. Kolfage have a right of indemnification? Officers and directors would have rights to indemnification. We don't know the details of their arrangement. We do know that Mr. Kolfage in his motion claimed that there is a directors and officers insurance policy, and he was seeking to modify the restraining order in order to obtain funds to pay the deductible for that insurance policy. But isn't it the case that under the corporate laws of any state I ever encountered, there's a statutory right to indemnification that attaches in many circumstances? Would that be a reasonable expectation here? Yes, Your Honor, it would be. I can't speak to the Florida state corporation's laws that would apply. Your Honor undoubtedly has far more experience in that area than I do. But that certainly is another factor. But none of that really matters because We Build the Wall will have a chance to litigate both the forfeitability of the funds and whether they have a superior claim to the United States in the ancillary proceeding under Section 853N. Would you agree that if all of its funds were restrained, and the government had not specifically indicated that it could use certain funds, then we would have a public jurisdiction? Under the shutdown theory? Yes. Not necessarily, Your Honor. I think that's a different set of facts. Hypothetically, let's say that the government had not indicated that We Build the Wall was free to use any funds, then would you agree that we would have a public jurisdiction? I'm not sure it would turn on the government's view. I think it would have to be that the court's order would prohibit it. I mean, the government's view here is we have no position on what they do with money that they raise post-indictment. We're not investigating the raising of that money. We're not evaluating the circumstances under which… Okay, maybe I'll ask it this way, Mr. Silverman. How do we assess when a company is at a standstill such that we have a public jurisdiction under the injunctions doctrine? Your Honor, what we know is here, We Build the Wall has the ability and has, much to Judge Pooler and the government's surprise, continued to be able to raise funds from its donors. It won't tell us, apparently, how much they have raised and what they might be spending that money on, but that's up to them. It's not up to the government or the court. And the ability for them to continue to employ people and to use other assets they may have. For example, they may have intellectual property assets. They certainly own website space. It's not that the government seized every asset that the corporation had. It seized roughly $1.4 million, which was in the three bank accounts, and only a small percentage of the $25 million that it had raised, we argue, in a fraudulent manner over the last couple of years. They're a corporation in good standing, and they have every right to do business as long as they're not using these monies. Right? Yes, Your Honor. They were administratively dissolved for some period of time. I understand that, but they're now in good standing. They can go out and hire people. They can solicit funds. That's what they were doing in the first place. Yes, Your Honor. And the government is not sought, and the district court has not made any rulings that prevent any of those actions from taking place. The only ruling that the district court has made on a probable cause finding is that the contents of those three bank accounts at that particular time contain crime proceeds that are forfeitable in this case. And the district court's probable cause finding implicit in that is that it's forfeitable in this case. That is the decision that the government put to the court. There needs to be no more inquiry about whether— Is the government still pressing the argument that We Build the Wall lacks capacity to sue? Yes, Your Honor, we are. I thought you waived that argument below, didn't you? Your Honor, we didn't raise it below, so it would potentially be subject to forfeiture. It's in the court's discretion whether to consider that argument. We would ask the court exercise its discretion to consider that argument and rule in our favor. Counsel, could you tell me how much money actually is under restraint? Yes, Your Honor. In those three bank accounts, our estimation is approximately $1.4 million. But where's the rest of the $25 million? It was either spent by We Build the Wall on its various activities or ended up in the pockets of Mr. Polfage, Mr. Bannon, Mr. Shea, and other people that were involved in the conspiracy. So it's a very small amount of We Build the Wall's total financial statements that are under restraint. That's correct, Your Honor. The point for the government, at least, is it's a very small amount of the overall fraud proceeds. Assuming we obtain a conviction in this case, we intend to seek restitution in the amount of $20 to $25 million for all the funds that were raised prior to the indictment. This forfeiture amount, the seized property, will not cover even a small portion of that. Counsel, does the government have any idea how much of the $25 million was actually spent on building a wall? Mr. Weddle suggested that a lot went to concrete and other things. A substantial amount was. But the point is that Mr. Weddle would have this court read our indictment as some type of embezzlement case, which is not how the scheme is charged. The scheme is charged as a wire fraud case. And the way that the fraud was perpetrated was by lying to the hundreds of thousands of donors about the fact that, among other things, Mr. Colfage would not receive compensation. He was going on TV. He was going on the radio. They were putting out press releases, and they put it in their bylaws, saying, Colfage is doing this for free. And in their own internal communications, it was clear that it was because they wanted to paint him in a certain light in the media to help their fundraising, because it was important to donors. So every dollar that came in, whether they ended up using it to build a wall or they ended up using it to buy a boat for Mr. Colfage or line Mr. Bannon's pockets, was fraudulently obtained. To go back to the restraint here, is there some outer limit? I hope you can understand the concern. Is there some outer limit to how long a third party can be forced to wait between a pretrial restraint and an ancillary proceeding to challenge a forfeiture? Your Honor, there might be. This is not that case. I recall, I believe it was D.L. Meda that referenced the possibility that this could occur. Here, our trial is set for November. That's four and a half months from now, five and a half months from now when it is set. That is not an unreasonable time for a restraint. The district court here found probable cause to believe that the proceeds that are in those bank accounts are crime proceeds that are forfeitable. In this case, this is not a situation where the government has acted unilaterally or has engaged in something without— So Mr. Retto, just on the merits, says that these were never actually obtained under Section 853. They were obtained by We Build the Wall and not obtained by the criminal defendants here. What's your response to that? Your Honor, he's just wrong about that for two reasons. One is Honeycutt was about a money judgment, not about specific property. It does not apply in this context. And second, and perhaps more importantly, the facts do not bear that out. Brian Colfage was and is the founder, president, CEO of We Build the Wall. It is his organization. And we know that from the facts of the case. He was able to steer money to Bannon, Shea, and himself without anyone stepping in his way. And he's the one who raised the money fraudulently into those accounts. And there are numerous cases where we see similar situations of corporate accounts or third parties holding forfeitable assets. For example, D. Almeida, DSI Associates, Daugherty's, Watts. Virtually all the cases that are talked about in our briefs happen to be cases where it's corporate accounts or third parties that hold the assets that are forfeitable. And there's no question under the law of this circuit that that is sufficient control here. But in any event, that will be able to be litigated in the event of a conviction in a Section 853N proceeding. Both by the defendants prior to that proceeding and by We Build the Wall in that proceeding. It's not as if the district court's probable cause determination is some final determination. Because it's not. It's preliminary. So isn't there a due process concern if this money is restrained for a year? When was it restrained? August of this year? Yes, Your Honor. And the trial won't be until November 2021. And they are after a verdict and they are after a move, assuming they have the grounds to lift the restraint. Aren't there due process concerns? No, Your Honor. There aren't due process concerns. Tell me why not. Well, Your Honor, I would direct first of all, you know, at that hearing, the 853N hearing, they will have the opportunity to have process. There's two challenges that We Build the Wall will be able to bring in that proceeding. First, they can challenge the forfeitability of the accounts under this court's decision in Dogerness. Second, they can argue that their ownership interest is superior to the government's under 853N6A. So to succeed on due process challenge here, they'd have to argue they're entitled to an immediate hearing rather than a hearing, say, six to seven months from now. They simply can't meet that burden, which is a high one. I would recommend the court direct its attention to the Fourth Circuit's decision in McCann, where the Fourth Circuit rejected this very argument and said that for third parties prior to a preliminary order of forfeiture, there is nothing more required under due process than the process that's in place to restrain funds for a district court has to find probable cause, just like for a search warrant for physical evidence, and that the 853N proceeding protected the interest on the back end. Similarly, the Fifth Circuit in Holy Land, an embanked decision, found the same thing in an 853K context, that 853K did not violate due process because of 853N, which provides for a fulsome opportunity for a third party to challenge forfeiture in that context. But there is such a thing as an innocent third party, right? So here, and I understand your argument that we build the wall is effectively controlled by one of the criminal defendants, but there might be, and I mentioned the hypothetical, which was somewhat helpful to me, that was in Mr. Bettle's reply brief. I mentioned a case where there's a neighbor who has no idea that his neighbor is a drug dealer. And what do we do in that case? Your Honor, there are two things. One is the government, of course, can exercise its discretion, and I believe it's 853I, there's a provision actually for a third party to seek redress from the Attorney General for sort of an overbroad seizure or restraint. But in addition, the district court still has to find probable cause that the assets are forfeitable. And so a district court looking at a situation that is perhaps not hypothetical or something similar may find that it is not, that property is not subject to forfeiture because there's evidence of, you know, a bona fide purchaser for value or other facts that are relevant to its determination. I mean, ultimately, due process comes down to the Matthews factors. And here, you know, here the most relevant ones are the private interest, and here there's really no private interest here. Obviously, they have some interest in having those funds back, and they will have the opportunity to litigate that. But their inability to use just that set of funds is nothing like a Sixth Amendment right to funds for counsel in Monsanto, which is really the only other context that's potentially analogous. As the courts pointed out, they can still use funds, raise funds, and otherwise operate as they appear to be doing so. With respect to the risk of erroneous deprivation. Can I just go back? I forgot one question on the capacity to sue issue, which is a little bit of a wrinkle for me. As I understand it, the Florida statute indicates that the reinstatement relates back to and takes effect as of the effective date of the administrative dissolution, and the corporation resumes carrying on its business as if the administrative dissolution has never occurred. So there's this relation back principle, and you just told me earlier that they've effectively resumed business as of a certain time. So it seems to me that they do have the capacity to sue under this Florida statute. Now, that might undermine the argument relating to appellate jurisdiction. How do we square those two things? Well, Your Honor, it's a complicated interplay because I do acknowledge that the statute references sort of a relation back. But the case law on capacity to sue seems fairly clear that it's as a matter of fact, not a matter of law at the time that the motion or the action is brought. So at the time that the motion or action was brought at that time, not now looking backward in October of 2020, there was no factual or legal capacity to sue. And the narrow exception to that, of course, in Florida law is to liquidate or wind up assets. And it's clear both from the briefs and from Mr. Weddle's presentation, that is absolutely not what We Build the Wall is engaged in. They wish to carry on their mission. And for that purpose, they may not litigate when they engage in this type of sort of strategic gamesmanship of not filing their report, not paying their amount due. And then suddenly the government raises the issue and immediately they're able to file their report and pay the amount due a couple of days later. Counsel, wouldn't we all have been better off if the district court had, to use a phrase, pierced the corporate veil and showed control by the defendants? Do you think it's necessary? No, Your Honor, the district court didn't and did not need to redetermine the merits of the government's restraining order in its decision that's on appeal. It had a application affidavit in front of it. It issued the restraining order in August and its order in December that's on appeal. The district court did not revisit its probable cause determination. It's a clear implication from some of the language of the order that the district court had no reservation standing by its earlier determination. But there's no need for the district court to go back and somehow do a deeper dive than it did the first time. The government and we build a wall and the defendants are entitled to the court finding probable cause under 853E1A. And it did so. And that's really all that's necessary at this point. And the further litigation over this will occur at an 853N proceeding in the event that a conviction is obtained in this case. Thank you. Your time has expired. Mr. Weddle, you've reserved three minutes for rebuttal. Thank you, Your Honors. This is not a piercing the corporate veil situation, Judge Pooler. This would be reverse piercing of the veil. Normally, piercing the corporate veil is so that a creditor of the corporation can reach the assets of an owner of the corporation. This is kind of the opposite. And we build a wall is not a guarantor for restitution losses or forfeiture owed by the defendants. The government in its argument just now, once again, incorrectly, inaccurately said virtually all of their cases involve corporate accounts or third parties or situations where third parties hold assets that are forfeitable. The piece that they're leaving out, which is the difference between an accurate representation and an inaccurate one, is that those cases involve forfeiture by the defendant of amounts of money that reside in a corporation's bank accounts. Not the opposite. They are trying to do the opposite here. They're saying even though this money was not obtained by the defendant and it's not in the possession of the defendant, it's somehow forfeitable. So I think that the government, in answer to one of our questions, said or represented that in effect, right, maybe you're relying on a very fine line, but in effect, one of the defendants, one of the criminal defendants, controlled we build a wall. He was Oz behind the curtain and controlled everything. Shouldn't that have a practical effect when we talk about whether a third party obtained or didn't obtain? You know, it's people who obtain on behalf of a corporation. No, it shouldn't. Your Honor, if the government wants to obtain a forfeiture order against Mr. Colfax for $25 million, that would be analogous to the fact patterns in the cases that it's talking about. And they would say, we don't care. You didn't really get the money. It's in the corporation. But we're counting that as if you obtain the money. So you, Mr. Colfax, have to pay $25 million, even though it didn't all get diverted to you. That is a totally different argument and a different situation from what we're talking about here, where we build a wall is a third party. And make no mistake, there is zero due process. So we built the wall. So, Mr. Weddle, if the boss of an organized crime family formed an LLC and had all of his capos kick the money into the LLC instead of handing it to him in cash, the government couldn't reach that on your argument on an indictment with a forfeiture notice against the organized crime boss. Is that right? No, that's not right. The government could reach that through all sorts of mechanisms. First of all, in the organized crime context. But my premise is, my question is, could it reach it by indicting the organized crime boss? I'm not talking about other remedies that they might have. Well, they they could they could reach it by saying that when money and because of this subterfuge set out set up by the crime boss, that that really is his pocket. So when he says, put it in this LLC, don't put it in my pocket. That is him obtaining the money. Yes, yes. That's the government's argument here. But the problem here, Your Honor, is that they they are doing it under seal based on some, you know, That's a separate, that's a separate, separate argument. So what if that's the government's argument and there's some something to support it? Because that's what I finally come to understand is the fundamental argument. There are. OK, so the fundamental argument is that this is money that is obtained by the defendants, even though it is in the bank account of Weibull. He's the crime boss. Yes. Well, you know, I think that there is no limit to their argument. I think under those facts, then they could restrain the money and it would go through the process. We're far afield from that because they're under their argument. There is no possibility of being heard. And it's it doesn't matter whether it's an LLC set up by a crime boss or it's Justin Weddle's car. There's no opportunity for the owner of the asset to be heard in any way. There is an opportunity. You have an opportunity. There's a trial date. And I understand, Mr. Weddle, the trial dates are what they are. But the trial date in November. So there will be an opportunity at that point. Well, there won't be in the trial. Sometime after the trial, there will be an ancillary proceeding. And we put this in our reply brief. But under the government's argument, an ancillary proceeding is a different thing because an ancillary proceeding has to do with showing a superior ownership interest to the defendant or to the government standing in the defendant's shoes. Here, the defendants don't have an ownership interest in these assets. So that's, you know, that's part of the point. So you claim that they don't have an ownership interest. But that's why I asked whether it would have been useful for the district court to close that loop. Your Honor, they don't. You know, we have a number of arguments. The first argument is what is the statute that they're proceeding under? There should be a law that covers this draconian power by the government. It's not the ones they point to. Then after that, if you assume that we're under this statute, we have factual arguments as well that we were never permitted to raise. And we set out, and this is in the appendix, I think, at page A, let's see, I think it's A60 something. But we specifically listed for the government specific expenditures of the entity. And we said, you've seized these bank accounts. Can we at least get approval to pay this money? And part of that money, Judge Kaplan, involved paying some money towards Mr. Colfage's legal fees.  And it also involves paying legal, and it involved paying invoices that were outstanding for services performed. But if there's no relationship, why should the corporation pay legal fees for Mr. Colfage? If he's not in control and the owner of this, why are they obligated to pay his legal fees? Well, Your Honor, that is the practice of this organization. And the government, when we requested this, the government said, well, what's your authority for unfreezing assets in order to pay legal fees? And Judge Kaplan may enjoy this. I invite your attention to page 94 of the appendix. But we quoted two paragraphs from Judge Kaplan's decision in Stein, which was affirmed by this court, about the regular practice that employers often have of paying legal fees for employees. But more importantly, Your Honor, even about his legal fees, it's about the organization. Was Mr. Colfage an employee of We Build the Wall? He was the CEO. Would you argue that they owe a duty to him? No, it was a voluntary. What we said is we said, absent government intervention, We Build the Wall would pay these fees. More fundamentally, We Build the Wall certainly would have hired its own lawyers to deal with this. Why can't they use the money that they're continuing to raise to pay legal fees? Your Honor, they haven't processed the money. Their estimate is that the amount of money may be something on the order of $50,000. That's less than... Oh, not enough to pay legal fees. No, it's less than the outstanding invoices in August. So some people, knowing of the indictment, have declined to continue to fund We Build the Wall. Is that the argument, that they're just not raising enough money because people know that the principals were indicted? Well, Your Honor, another factual argument that we have is that the claimed fraud here is that no money would go to Mr. Colfage. That disclosure, that false statement, if you assume it's a false statement, was corrected on or around January 1st of, let's say, I guess it was 2020. So all of the money seized or nearly all of the money seized, I think the government said 1.4 million seized. I thought it was more money, but it was more than 95% of the money seized had been donated to We Build the Wall well after that corrective disclosure. So if you have a fraud that depends on no diversion of assets to Mr. Colfage, and then you say, well, he's going to get money. He's going to be compensated. And then a month later or three months later or six months later, someone gives money to We Build the Wall. They're not giving money. The money that they give is not the proceeds of that particular fraud. This may be a good place to stop. Your time has long expired. Thank you both for a very lively argument. We will reserve decision.